**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: IMPRELIS HERBICIDE MARKETING,** | : | |
| **SALES PRACTICES AND PRODUCTS LIABILITY** | : | |
| **LITIGATION** | : | **MDL No. 2884** |
| | : | **11-md-02884** |
| _____ | : | |
| | : | |
| **THIS DOCUMENT APPLIES TO:** | : | **Case No.** |
| **GREENER,** *et al.*, **V. E.I. DUPONT DE NEMOURS** | : | **2:11-cv-7599** |
| **AND COMPANY** | : | |

**MEMORANDUM**

PRATTER, J.                                                                          JANUARY 30, 2014

Plaintiff Pilgrim Village Associates has moved to extend the deadline to opt out of the

class action settlement recently approved by this Court in this matter.  Pilgrim Village claims that

its failure to file an opt-out form by the specified deadline as required by previous Order of this

Court was the result of excusable neglect.  Defendant DuPont argues that Pilgrim Village's

failure to timely request to opt out of the settlement was not excusable.  The Court agrees that

Pilgrim Village could and should have complied with the Court's Orders with respect to opting

out of the settlement and will therefore deny the motion.

**BACKGROUND**

Pilgrim Village Associates is one of 29 plaintiffs in the matter of *Greener v. E.I. DuPont*

*de Nemours & Co.*, Civil Action 11-7599, who filed an individual complaint charging DuPont

with a variety of products liability claims with respect to DuPont's Imprelis herbicide.  DuPont

answered that Complaint in August, 2012.  A few months later, Class Plaintiffs in this

multidistrict litigation filed for preliminary approval of a classwide settlement of Imprelis claims

against DuPont.  *See In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig.*, 11-

2284, Docket No. 117.  Very shortly afterwards, counsel for Pilgrim Village mailed Pilgrim

Village a letter instructing it to fill out and sign an opt out form.  *See* Def.'s Opp., Ex. 1.  In

February, 2012, before the settlement was preliminarily approved, counsel for a number of

individual plaintiffs filed a "Notice of Intention to Opt Out of Class Action Settlement" that

listed Pilgrim Village among those plaintiffs who intended to opt out of the settlement.  *See In re*

*Imprelis*, Docket No. 154.

On February 12, 2013, the Court preliminarily approved the class action settlement, and

specifically ordered that:

> Any Settlement Class Member may opt out of the Settlement by following the
> "Exclusion" procedure set forth in the Long Form Notice and the Settlement Agreement.
> All Settlement Class Members who do not opt out in accordance with the terms set forth
> in the Settlement Notice and the Settlement Agreement will be bound by all
> determinations and judgments in the Action.  Any Class Member who wishes to opt out
> of the Class must do so in writing by mailing a request for exclusion to the Claims
> Administrator.  Any such request must be postmarked no later than the Opt-Out
> Deadline, June 28, 2013.  The request to opt out must be signed by the Class Member
> seeking to opt out and must set out the Class Member's first and last names (or company
> name), valid mailing address and functioning telephone number.

*Id.*, Docket No. 160, ¶ 8.  The Settlement itself provided that DuPont could terminate the

agreement if "in its sole discretion, DuPont believe[d] that the number of Opt-Outs was

unsatisfactory."  *See id.*, Settlement Agreement and Release, Docket No. 118-1, § IX.A.  Three

days after the Court preliminarily approved the Settlement, counsel for Pilgrim Village again

mailed an opt-out form to their client and instructed it to fill out the form.  Counsel for Pilgrim

Village also received a Long Form Notice from the court-appointed claims administrator, which

included opt out instructions consistent with the Court's Order.  *See* Def.'s Opp., Ex. 4.

Throughout this time period, counsel for Pilgrim Village, on behalf of all of their Imprelis

clients, corresponded with DuPont's counsel regarding site inspections of their clients' property.

In July, 2013, counsel for DuPont notified counsel for Pilgrim Village that it would not pursue

site visits at that time for properties whose owners had successfully opted out of the settlement. In that letter, DuPont noted that "[a] number of your clients have claims pending in the Imprelis Claims Resolution Process and many of these clients have also requested to opt out of the proposed settlement." *See* Pl.'s Mot., Ex. F. In a follow-up letter, DuPont counsel stated, "DuPont is willing to continue with property inspections for any of your clients who wish to continue in the Imprelis Claims Resolution Process. . . If your clients . . . wish to proceed with inspections in the Claims Resolution Process, please let me know and I will arrange for a DuPont arborist to visit their properties." *See id.*, Ex. H. In the correspondence discussing clients who had opted out, no particular clients were mentioned by name, either by Plaintiffs' counsel or DuPont's counsel. *See id.*, Exs. F-I.

On August 7, 2013, the court-appointed claims administrator submitted to the Court a list of class members who had submitted opt out requests. *See In re Imprelis*, Docket No. 184. Pilgrim Village did not appear on this list. At the final fairness hearing, counsel for DuPont stated that DuPont agreed to accept all late or incomplete opt-out forms up to the date of the hearing, but expressly stated that DuPont would not accept any opt-out forms past that date, and in its Order granting final approval, the Court approved the list of opt-out class members, including those who had submitted untimely or incomplete forms as of the date of the final fairness hearing. *See id.*, Docket No. 244, ¶ 12.

Following settlement approval, the Court asked the parties to provide a list of all cases pending in the MDL and to indicate which cases/claims were resolved by the class settlement. *See id.*, Docket No. 245. Counsel for Pilgrim Village filed a list of clients who they contended had opted out of the settlement, including Pilgrim Village. The Court then asked counsel to clarify a number of discrepancies between the lists submitted by individual plaintiffs' counsel

and the opt-out list of record.  Shortly thereafter, on November 20, 2013, counsel for Pilgrim

Village submitted, for the first time, a signed opt-out form for Pilgrim Village.  The instant

motion followed.

### DISCUSSION

Under Federal Rule of Civil Procedure 6(b), "[w]hen an act may or must be done within a

specified time, the court may, for good cause, extend the time . . . on motion made after the time

has expired if the party failed to act because of excusable neglect."  The Third Circuit Court of

Appeals has "recognize[d] that deadlines are an integral component of effective consolidation

and management of the modern mass tort class action," but has cautioned courts not to ignore

equitable considerations in favor of "rigid and unquestioned adherence" to such deadlines.  *In re*

*Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 316 (3d Cir. 2001).  Courts in the

Third Circuit consider four factors in assessing the issue of excusable neglect:

> 1) the danger of prejudice to the nonmovant; 2) the length of the delay and its potential
> effect on judicial proceedings; 3) the reason for the delay, including whether it was
> within the reasonable control of the movant; and 4) whether the movant acted in good
> faith.

*Id.*, at 322-23 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395

(1993)).  The determination of whether a party's failure to meet a given deadline is excusable "is

at bottom an equitable one, taking account of all relevant circumstances surrounding the party's

omission."  *Pioneer Inv. Servs. Co.*, 507 U.S. at 395.  "Where those equitable powers are

exercised in the form of case management decisions in a complex class action, 'district court

discretion is at its greatest.'"  *In re Ins. Brokerage Antitrust Litig.*, 374 F. App'x 263, 266 (3d

Cir. 2010) (quoting *In re Vitamins Antitrust Class Actions,* 327 F.3d 1207, 1210 (D.C. Cir.

2003)).

1.   *The Danger of Prejudice to the Nonmovant*

DuPont argues that its ability to terminate the agreement based on an unsatisfactory number of opt-outs was an essential term of its agreement, and that opening the door to this Plaintiff (and potentially to other opt outs after the time has passed for opting out of the agreement) would deprive DuPont of a key contractual right.  Pilgrim Village counters that allowing one additional opt-out is hardly likely to prejudice DuPont, especially since there are no other pending motions for extension or similarly situated class members who would be likely to come out of the proverbial woodwork should the Court grant its motion.

If Pilgrim Village now is allowed to litigate its claims against DuPont, DuPont will suffer prejudice insofar as it will have to defend against one more plaintiff than would be in litigation if the Court enforces the opt-out deadline against Pilgrim Village.  Such prejudice has been recognized as a basis for questioning tardy opt-out efforts, even where the prejudiced party is a sophisticated litigant.  *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, MDL No. 1203, 2009 WL 3444763, at *3 (E.D. Pa. Oct. 23, 2009) ("We find that Wyeth will suffer prejudice if plaintiff's late opt-out request is permitted.  Wyeth will be forced to litigate an additional case that . . . it had thought would be part of the settlement class.")

In evaluating a late opt out issue in another MDL, the Third Circuit Court of Appeals agreed with the defendant that "determin[ing] ahead of time whether the settlement would resolve most of the potential claims" was an important part of the defendant's bargain in accepting the settlement and that this bargained-for benefit would be upset by later allowing late opt-outs, even when there was no concrete evidence of other potential late filers waiting in the wings.  *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*,

92 F. App'x 890, 894 (3d Cir. 2004).[1]  The *Diet Drugs* court noted that the district court had found that the plaintiff's claim in that case of attorney negligence as the excuse for the party's tardiness was "neither unique nor compelling."  *Id.*

Pilgrim Village attempts to distinguish its motion by arguing that its situation *is* unique and compelling, in that DuPont knew of Pilgrim Village's intent to opt out all along and treated it as if it had opted out.  According to Pilgrim Village, DuPont must have known of its intention to opt out because Pilgrim Village had filed a lawsuit independent of the pending class action suits, and it joined in a notice of intention to opt out prior to the Court's preliminary approval of the settlement.  Pilgrim Village also argues that DuPont treated it as an opt out when DuPont failed to schedule a site inspection after telling Pilgrim Village's counsel that  site visits would not be scheduled for plaintiffs who had opted out.

DuPont counters that many plaintiffs who filed individual lawsuits chose not to opt out of the settlement, that correspondence referring to Plaintiff's counsel's clients generally did not put DuPont on notice that *Pilgrim Village* specifically opted out or reflect any acknowledgment by DuPont of Pilgrim Village's opt-out status, and that other plaintiffs listed on the same notice of intent to opt out ultimately did not opt out of the settlement, giving that "notice" filing little weight.  DuPont also notes that any failure on DuPont's part to inspect Pilgrim Village's property is more a reflection of the large number of participants in the claims resolution process than an actual acknowledgment that Pilgrim Village opted out of that process.

DuPont's interpretation of these facts is reasonable.  At most, DuPont had notice that Pilgrim Village was likely to opt out.  Nothing presented by Pilgrim Village shows an actual acknowledgment by DuPont that Pilgrim Village opted out.  On the contrary, the correspondence

---

[1]      *In re Diet Drugs*, 2009 WL 3444763, and *In re Diet Drugs*, 92 F. App'x 890, each involve a separate late opt-out request in the same multidistrict litigation.

from DuPont regarding site visits states that "[a] number of your clients have claims pending in the Imprelis Claims Resolution Process and *many* of these clients have also requested to opt out of the proposed settlement," not that all of them had opted out and certainly not that Pilgrim Village, in particular, had opted out.  *See* Pl.'s Mot., Ex. F.  Moreover, in August of 2013, the Settlement Claims Administrator filed a list of all class members by name who had opted out, and that list did not include Pilgrim Village.  As DuPont points out, and as the Court has seen through objections to the settlement and other correspondence directed to the Court, there are many class members who at various points in the process have expressed dissatisfaction with the claims resolution process but who chose not to opt out of the settlement, thus demonstrating that dissatisfaction with the settlement is not the equivalent to opting out of it.

Pilgrim Village is not, therefore, as unique as it would have the Court find it to be.  On the other hand, it is the only class member *so far* to ask for an opt-out deadline extension after final approval of the settlement. Ultimately, however, in balancing the impact of one class member's request for relaxing a deadline against the Defendant's bargained-for certainty, the potential for future requests from similarly situated class members, and the cost to DuPont of continued litigation against an additional party, this factor weighs in favor of DuPont.

### 2.  *The Length of the Delay and its Potential Effect on Judicial Proceedings*

Whether Pilgrim Village delayed for five months or two months is a matter of debate between the parties.  The opt-out deadline was originally set as June 28, 2013.  DuPont, however, agreed to accept all opt-out requests filed as of the date of the final fairness hearing on September 27, 2013.  Pilgrim Village filed its opt-out request on November 20, 2013.  Under any scenario, of course, Pilgrim Village's opt out was materially delayed.  However, given that an appeal of the final settlement approval is pending and discovery is not yet underway in the

Individual Plaintiffs' cases, Pilgrim Village's delay is unlikely to have a tangible effect on the proceedings in this matter, aside from necessitating this motion practice.

    *3.   The Reason for the Delay*

    This factor weighs heavily against Pilgrim Village.  Pilgrim Village claims that it failed to file a timely opt-out form because it believed that DuPont understood its intention to opt out. As previously discussed, however, the evidence presented by Pilgrim Village does not show understanding on DuPont's part that Pilgrim Village had opted out.  Indeed, as early as August, 2013, it was clear that DuPont did not consider Pilgrim Village to have opted out.  Certainly, the list of opt outs filed by the Claims Administrator did not include Pilgrim Village.  Despite this clear indication that there was no "understanding" regarding Pilgrim Village's opt-out status, Pilgrim Village did not send in a signed opt-out form until the Court specifically pointed out the discrepancy between the opt-out list and a list of cases furnished by Individual Plaintiffs' counsel in response to this Court's Order requesting a comprehensive list of cases resolved by the Settlement.

    In the primary case on which Pilgrim Village relies, a court relaxed an opt-out deadline for a particular plaintiff in large part because that plaintiff's delay was due to a lack of notice of a deadline.  *See In re Ins. Brokerage Antitrust Litig.*, 374 F. App'x at 266.  That fact pattern is not applicable here.  Correspondence between Pilgrim Village and its counsel shows that not only was counsel aware of the need to comply with the timing requirements contained in the Court's Order of February 12, 2013, it communicated that requirement to Pilgrim Village multiple times. There is no question, then, that Pilgrim Village had actual notice of the settlement and of the need to file an opt-out form by the specified June 28, 2013 deadline.  Given that, Pilgrim

Village's expressed reason for not filing a timely opt-out form – that DuPont understood that it meant to opt out of the settlement – rings hollow.

In other cases excusing a late filing, the plaintiff had, during the opt-out period, expressly communicated a desire to opt out of the settlement.  *See, e.g., In re Four Seasons Secs. Law Litig.*, 493 F.2d 1288 (10th Cir. 1974) (finding excusable neglect when plaintiff had submitted, *during the opt-out period*, a letter stating that if a revised release was not acceptable, plaintiff opted out).   Again, the cited case involves facts not present here.  While Pilgrim Village was included in the "notice of intent" to opt out filed on the docket, some class members included in that filing chose not to opt out.  In addition, that notice was filed even before the settlement had been preliminarily approved and before the Court entered an order providing explicit instructions for opting out.

Pilgrim Village was represented by counsel before, during, and after the opt-out period. Counsel for Pilgrim Village received all of the court filings in this case, including the Order providing explicit instructions for opting out.  Once those instructions were clearly delineated in a court order, those same counsel managed to either file opt-out forms or to successfully convey the importance of filing such forms to several other clients.  *See In re Diet Drugs*, 92 F. App'x at 895 (finding significant the fact that "the record shows that [plaintiff's] counsel was aware of the deadline and filed timely opt-outs in other cases").  Counsel also received the opt-out list filed in August, 2013, from which Pilgrim Village was missing.  Nevertheless, it still took more than three additional months and a direct inquiry from the Court to spur Pilgrim Village to send in a signed opt-out form.

To the extent that Pilgrim Village's delay is attributable to counsel's failure to act, a client is "accountable for the acts and omissions of [its] chosen counsel."  *See Pioneer Inv. Servs.*

*Co.*, 507 U.S. at 397.  Thus, counsel's choices or conduct as a reason for Pilgrim Village's delay is not a justification that will excuse Pilgrim Village.

Armed with knowledge of how to opt out of the settlement, counsel familiar with the procedure who on more than one occasion provided explicit instructions and attempted to facilitate compliance with opt-out procedures, and ample notice, Pilgrim Village's reason for not timely mailing a signed opt-out form is difficult to discern.  Indeed, other than an objectively unreasonable belief that generic communications with DuPont conveyed its intentions, Pilgrim Village does not seem to have any reason for failing to comply.  Thus, this factor weighs against a finding of excusable neglect.

 *4. Whether the Movant Acted in Good Faith*

DuPont speculates that the delay in sending in an opt-out form could be the result of gamesmanship, as discovery in related cases pending in state courts commenced once the opt-out period ended, giving Pilgrim Village a chance to wait and see how things developed in those cases before filing the instant motion.  Pilgrim Village merely states that it believed in good faith that DuPont knew all along of its intentions.  Even if this belief was unreasonable, the Court has no reason other than mere speculation on DuPont's part to doubt Pilgrim Village's good faith. The Court is not prepared to adopt such a cynical view.  However, the Court observes that "good faith" includes demonstrable respect for the Court's case management orders, deadlines, procedures, and decisions.  Pilgrim Village has demonstrated insufficient respect in that regard and may actually stand as a problematic example for others.  This factor, ultimately is at most, from Pilgrim Village's standpoint, neutral.

CONCLUSION

Evaluating all of the factors discussed above, the Court will deny Pilgrim Village's request for an extension of the opt-out deadline.  Pilgrim Village cannot dispute that it had ample notice of the settlement's terms and of the procedures required for opting out of the settlement, and it has presented no compelling reasons for its failure to honor the Court's instructions. DuPont bargained for certainty and would be prejudiced both by having to defend against an additional party in the ongoing individual lawsuits and by the potential for other similarly situated class members to challenge the opt-out deadline.  Finally, as is appropriate in making an equitable determination such as this one, the Court takes into consideration the fact that denying this request will not leave Pilgrim Village empty-handed.  Because Pilgrim Village previously submitted a claims resolution form, it is entitled to participate in the Class Settlement and to recover damages through the claims resolution process.

For the foregoing reasons, Pilgrim Village's motion is denied.  An appropriate Order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge